UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPICENTRX, INC.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COREY A. CARTER, M.D,<br><br>　　　　　　　　　　　Defendant. | Case No.: 20cv1058-TWR-LL<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO QUASH**<br><br>**[ECF No. 53]** |

Currently before the Court is the Parties' Joint Motion for Determination of a Discovery Dispute. ECF No. 53. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Quash.

## RELEVANT BACKGROUND

The instant dispute arises from Defendant's deposition subpoena of Plaintiff's former in-house general counsel, Sarah Hibbard. ECF No. 53 at 3. Defendant contends Ms. Hibbard's testimony is necessary for the limited purpose of opposing Plaintiff's Motion to Disqualify [ECF No. 40]. Id.

**I.     Plaintiff's Motion to Disqualify**

On August 27, 2020, Plaintiff filed a Motion to Disqualify defense counsel Guy A. Ricciardulli, Donald McKillop, and their respective law firms, from representing Defendant (or any other party) in the above-captioned matter. See ECF No. 40. In its

Motion to Disqualify, Plaintiff argues Mr. Ricciardulli and Mr. McKillop have a non-waivable conflict of interest because Plaintiff previously engaged them in a prior matter against Multivir, Inc. allegedly involving "contractual, licensing and oncolytic virus development issues." Id. at 9. Specifically, Plaintiff argues Mr. Ricciardulli and Mr. McKillop's prior retention "centered on litigation involving development and ownership of a proprietary treatment, which is substantially related to the trade secret misappropriation, licensing, disclosure and backchannel issues at the center of this litigation." Id. at 18.

## II. Defendant's Subpoena of Sarah Hibbard

On October 2, 2020, Defendant subsequently served a subpoena on Plaintiff's former in-house general counsel, Sarah Hibbard. ECF No. 53 at 3. Defendant argues Ms. Hibbard's testimony "is necessary for the limited purpose" of "opposing [Plaintiff's] Motion to Disqualify." Id. Specifically, Defendant argues that "no confidential information" was conveyed by Ms. Hibbard to defense counsel during the course of the Multivir representation. Id. at 11. Instead, Defendant argues that "in sum total, counsel was advised that a debt was outstanding and the debtor was not paying." Id. Given the factual dispute between the Parties over what was conveyed to defense counsel, Defendant argues Ms. Hibbard's deposition is necessary to allow the Court a "full and fair review of the evidence" in deciding Plaintiff's Motion to Disqualify. Id.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure establishes the rules for subpoenas served upon individuals and entities that are not parties to the underlying lawsuit. Pursuant to Rule 45, "on timely motion", the court where compliance is required "must quash or modify a subpoena" that: "(i) fails to allow reasonable time to comply;" "(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);" "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "(iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek

a protective order. See DR Sys. v. Eastman Kodak Co., No. 09cv1625-H (BLM), 2009 U.S. Dist. LEXIS 84575, at *6 (S.D. Cal. Sep. 14, 2009). The party who moves to quash the subpoena has the burden of persuasion. Id.

# ANALYSIS

## I. Standing

As a preliminary matter, the Court must first determine whether Plaintiff has standing to bring a motion to quash the deposition of Ms. Hibbard—a non-party.[1] "Courts have consistently provided that, as a general rule, a party has no standing to quash a subpoena served upon a third party, except as to privilege[.]" Vera v. O'Keefe, No. 10cv1422-L (MDD), 2012 U.S. Dist. LEXIS 35974, at *3 (S.D. Cal. Mar. 16, 2012) (emphasis added) (citations omitted); see also Peccia v. California, No. 2:18-cv-03049 JAM AC, 2020 U.S. Dist. LEXIS 89066, at *4 (E.D. Cal. May 20, 2020) ("The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege[.]") (emphasis added) (citations omitted); Knoll, Inc. v. Moderno, Inc., 2012 U.S. Dist. LEXIS 138497, at *4 (N.D. Cal. Sep. 26, 2012) ("[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed.") (emphasis added) (citations omitted). Here, the Court finds Plaintiff has sufficient standing to move to quash Ms. Hibbard's deposition subpoena, on the grounds that the subpoena may require disclosing potentially privileged or otherwise protected matter.

## II. Applicability of Shelton

The Court next turns to the Parties' dispute over whether the Eighth Circuit's three-part test in Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1986) should be applied in this case.

---

[1] This issue is unaddressed by either Party in their Joint Motion. See ECF No. 53.

The Shelton decision involved the deposition of a defendant's in-house counsel who had been specifically assigned to the underlying case. Id. at 1325. There, the Eighth Circuit held that:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

Id. at 1327.

For these reasons, the Eighth Circuit held that while "opposing trial counsel" is not "absolutely immune from being deposed"—a court should permit counsel's deposition only in those limited circumstances where the party seeking the deposition has shown that: "(1) no other means exist to obtain the information than to depose opposing counsel[;]" "(2) the information sought is relevant and nonprivileged;" and "(3) the information is crucial to the preparation of the case." Id.

"[C]ourts in this district and elsewhere in the Ninth Circuit recognize Shelton as the leading case on attorney depositions and follow the three-factor test laid out in the case." Stevens v. CoreLogic, Inc., No. 14cv1158 BAS (JLB), 2015 U.S. Dist. LEXIS 165874, at *4 (S.D. Cal. Dec. 10, 2015); see Insogna v. Hetero Labs Ltd., No. 3:19-cv-1589-LAB-AHG, 2020 U.S. Dist. LEXIS 3189, at *6 n.4 (S.D. Cal. Jan. 3, 2020) (collecting cases).

In support of its position that the Shelton test applies here, Plaintiff argues courts in this district have elected to apply Shelton broadly even in situations where the proposed

deponent is not an adversary in the underlying case—and particularly when the proposed deponent is in-house counsel. See ECF No. 53 at 6.

The Court does not find Plaintiff's arguments persuasive. As the Eighth Circuit itself held when revisiting the Shelton decision in Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002):

> The Shelton test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. Because this abuse of the discovery process had become an ever increasing practice, this Court erected the Shelton test as a barrier to protect trial attorneys from these depositions. But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case. Therefore, the Shelton test applies only to the instant case, not to the concluded case.

Id. at 730 (internal citations omitted).

Contrary to Plaintiff's representation, recent decisions from courts in this district have recognized this distinction. In Textron Fin. Corp. v. Gallegos, No. 15cv1678-LAB (DHB), 2016 U.S. Dist. LEXIS 103578 (S.D. Cal. Aug. 5, 2016), the court held the Shelton test was not applicable in post-judgment proceedings where the proposed deponent was not trial or litigation counsel in those proceedings or the underlying litigation. Id. at *6-7.

Although Plaintiff argues the Textron decision was considered and rejected by another court in this district in Insogna v. Hetero Labs Ltd., No. 3:19-cv-1589-LAB-AHG, 2020 U.S. Dist. LEXIS 3189 (S.D. Cal. Jan. 3, 2020)—this is false. Indeed, in Insogna, the court specifically recognized that "[c]ourts have declined to apply Shelton when the proposed deponent is not trial or litigation counsel in the underlying case." Id. at *7. For

these reasons, the Insogna Court held that while the Shelton factors were applicable to determine whether the deposition of plaintiff's litigation counsel was appropriate, it <u>did not apply</u> to counsel who represented plaintiff in other matters, but did not serve as plaintiff's counsel in the underlying case. Id. at *9 ("Therefore, this Court will apply the Shelton factors to Mr. Ignogna's deposition, and the traditional Rule 45 test to Dr. Gay's deposition.").

The distinction is even more prominent here where Defendant is seeking to depose Plaintiff's <u>former</u> in-house counsel—not its current in-house counsel. As noted persuasively by another court in the Ninth Circuit, "[s]imply being a former general counsel for a party is insufficient to bring one under the protection of the Shelton rule." Devlyne v. Lassen Mun. Util. Dist., No. S-10-0286 MCE GGH, 2011 U.S. Dist. LEXIS 119173, at *5 (E.D. Cal. Oct. 14, 2011).

While the Court is mindful that the concerns set forth by the Eighth Circuit in Shelton over deposing counsel are still present, these concerns are less pronounced where the subject matter of the deposition is Ms. Hibbard's knowledge of events occurring during a prior concluded matter. See Andre v. Ricoh USA, Inc., No. 19-mc-80266-VKD, 2019 U.S. Dist. LEXIS 212899, at *6 (N.D. Cal. Dec. 9, 2019) ("[T]he Shelton analysis applies only where the discovery sought concerns matters relating to counsel's representation of a litigant in the current litigation."); ATS Prods. v. Champion Fiberglass, Inc., No. 13-cv-02403-SI (DMR), 2015 U.S. Dist. LEXIS 74015, at *19 (N.D. Cal. June 8, 2015) ("Because [defendant] seeks the deponent's percipient knowledge of events that occurred during a prior concluded case, Pamida applies, which requires the court simply to analyze the question under the ordinary discovery standards set forth in the Federal Rules of Civil Procedure.").

For these reasons, the Court applies the traditional Rule 45 analysis to Ms. Hibbard's deposition.

///

///

### III.   Analysis Under Rule 45

Under Rule 45, the Court first determines whether the deposition subpoena of Ms. Hibbard "requires disclosure of privileged or other protected matter[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii).

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In federal question civil cases and criminal cases, however, federal privilege law, rather than state privilege law, generally governs claims of privilege. Clarke v. Am. Commerce Nat. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."). "[T]he jurisdictional basis of an action will generally determine whether a district court will apply federal or state privilege law to the parties' claims of privilege." Williams & Cochrane, LLP v. Rosette, No. 17cv1436-GPC-DEB, 2020 U.S. Dist. LEXIS 109750, at *12 (S.D. Cal. June 23, 2020) (citation omitted).

Here, the Court exercises federal question jurisdiction over Plaintiff's claims under the Defend Trade Secrets Act and Electronic Communications Privacy Act, and supplemental jurisdiction over Plaintiff's remaining state law claims. See e.g., 18 USCS § 1836 ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section."). "A majority of federal courts have applied federal privilege law to claims of privilege in federal question actions with pendent state law claims." Williams, 2020 U.S. Dist. LEXIS 109750, at *11. This Court will follow the majority approach and apply federal privilege law.[2]

Under federal privilege law, "[t]he attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (citing Upjohn

---

[2] In their Joint Motion, the Parties appear to apply a mixture of federal and state privilege law without specifically addressing which law governs. See ECF No. 53 at 8-10, 15-17.

Co. v. United States, 449 U.S. 383, 389 (1981)). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." Id. (citation omitted). "The attorney-client privilege exists where: '(1) [] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" Id.

In the Joint Motion, Defendant asserts that it seeks to depose Ms. Hibbard regarding information Ms. Hibbard (as Plaintiff's former in-house counsel) communicated to defense counsel (as Plaintiff's former outside counsel) during the course of the Multivir matter. See ECF No. 53 at 11; see also ECF No. 53-1 at 4 ("We intend to conduct this deposition for the limited purpose of confirming the discussions between Ms. Hibbard and the attorneys related to the matter over which you seek to disqualify counsel."). The Court agrees with Plaintiff that the majority of such communications (if not all) fall squarely within the scope of the attorney-client privilege.

The privilege which protects attorney-client communications however "may not be used both as a sword and a shield." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted). "Where a party raises a claim in which fairness requires disclosure of the protected communication, the privilege may be implicitly waived." Id.; see United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (outlining three-part test "to determine whether a waiver has been effected[.]").

Here, by moving to disqualify defense counsel, Plaintiff has taken an affirmative step to put certain privileged communications made between Ms. Hibbard and defense counsel at issue. ECF No. 40 at 21 ("In addition, Defense Counsel's principal contacts and sources of information at EpicentRx were Ms. Hibbard and Dr. Carter[.]") (emphasis

added).[3] It is clear that Ms. Hibbard is uniquely situated to resolve the factual dispute between the Parties regarding the types of information communicated to defense counsel during the Multivir matter. In addition, based on Plaintiff's own representations, if the Court were to allow defense counsel to depose Ms. Hibbard regarding communications defense counsel were previously the recipients of (and therefore already privy to)—the erosion of the attorney-client privilege would be nominal at most.[4] See ECF No. 53 at 7 ("[D]efense counsel in the instant action were present during each of their conversations with Ms. Hibbard.").

The Court is mindful however that the scope of this implied waiver should be narrowly tailored to the needs of this case. Accordingly, the Court will allow Defendant to depose Ms. Hibbard for no more than **three hours.** The topics for deposition are further **limited exclusively** to communications Ms. Hibbard and defense counsel exchanged with one another during the course of the Multivir matter. The Court will permit the deposition to be taken by remote means via video.[5]

---

[3] In support of its Motion to Disqualify, Plaintiff also proffered the declaration of Meaghan Stirn, Plaintiff's Chief Financial Officer, concerning the specific types of attorney-client privileged communications allegedly provided to defense counsel during the Multivir matter. See ECF No. 40-1.

[4] The Court declines to consider whether the deposition would subject Ms. Hibbard to an undue burden when Ms. Hibbard—who is represented by independent legal counsel—has failed to make this objection. "A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected." G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc., No. 2:04-cv-01199-DAE-GWF, 2007 U.S. Dist. LEXIS 97869, at *12 (D. Nev. Jan. 9, 2007).

[5] The Court briefly addresses Plaintiff's October 14, 2020 Supplemental Brief alerting the Court to the fact that Ms. Hibbard's mother is employed as defense counsel's paralegal. ECF No. 54 at 2. Plaintiff argues defense counsel "could obtain an advantage" in deposing Ms. Hibbard and that "Ms. Hibbard's credibility may be compromised[.]" Id. at 3. Although Plaintiff is correct that this fact may ultimately affect the credibility of Ms.

## **CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Quash.

**IT SO ORDERED.**

Dated: October 20, 2020

Honorable Linda Lopez
United States Magistrate Judge

---

Hibbard's deposition testimony or the weight the Court may ascribe to it, the Court is unclear how this fact serves as a basis for precluding Ms. Hibbard's deposition entirely. Despite Plaintiff's concerns of undue influence and impropriety, the Court notes Ms. Hibbard is an attorney barred in the State of California (with all of the ethical obligations this entails) who will be testifying under oath and penalty of perjury.