UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPICENTRX, INC., <br><br> Plaintiff, <br><br> v. <br><br> COREY A. CARTER, <br><br> Defendant. | Case No: 3:20-cv-01058-LAB-LL <br><br> **ORDER DENYING MOTION TO DISQUALIFY ATTORNEYS [DKT. 40] AND GRANTING APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL SUBMISSION [DKT. 55]** |

Plaintiff and Counter-Defendant EpicentRx, Inc. ("EpicentRx") filed suit against Defendant and Counter-Plaintiff Dr. Corey A. Carter ("Dr. Carter") for claims related to his alleged misconduct while employed as the CEO of EpicentRx. Dr. Carter retained attorneys Guy A. Ricciardulli and Donald R. McKillop and their respective law firms ("Defense Counsel") to defend him in this matter. EpicentRx then filed this Motion to Disqualify Defense Counsel ("Motion"), contending that Counsel's previous representation of EpicentRx disqualifies them from serving as opposing counsel here. The parties dispute whether the two legal matters were substantially related such that Defense Counsel have a conflict of interest.

The Court, having considered the arguments in support of and in opposition to EpicentRx's Motion, **GRANTS** Defendant's Application for Leave to File

Supplement Submission and **DENIES** the Motion **WITHOUT PREJUDICE**.

## I. BACKGROUND[1]

EpicentRx is a biotechnology company specializing in clinical cancer immuno-oncology. (Dkt. 1, Complaint ("Compl.") ¶ 16). It focuses on developing cancer therapies and drug candidates to specifically target tumor cells, as well as on developing cancer vaccines to eradicate tumors and prevent them from returning. (*Id.* ¶ 16–17). EpicentRx is relatively small, and between around August and October 2018, employed only about fifteen people. (Dkt. 40-1, Declaration of Meaghan Stirn ("Stirn Decl.") ¶ 3). Dr. Carter was the company's Chief Executive Officer from March 2018 until May 2020, first in his capacity as an independent contractor consultant with "Chief Executive Officer Functions and Duties," and then as a full-time employee. (*Id.* ¶¶ 31–33).

### A. Multivir Dispute

In 2018, EpicentRx entered into a Development Services Agreement with another company, called Multivir, over a virus development program. (Stirn Decl. ¶ 5). The agreement led to a dispute among the two parties over money owed by

---

[1] Dr. Carter objects to the Stirn Declaration in its entirety for lack of personal knowledge and/or foundation, and to certain paragraphs of the Declaration for lack of personal knowledge, foundation, relevance, and hearsay. (Dkt. 61-1). Dr. Carter's objections are **OVERRULED**. First, Stirn asserts that she is the Controller and Vice President of Special Operations and former Chief Financial Offer at EpicentRx. (Stirn Decl. ¶ 1). She affirms that she reviewed relevant business records and was present at EpicentRx while Dr. Carter was employed, and that matters concerning the Multivir dispute were routinely discussed in meetings at which she was present. (*Id.* ¶¶ 1–2). Stirn thus has sufficient personal knowledge to attest to matters concerning the Multivir dispute. Second, to the extent Stirn opines on communications made in meetings at which she wasn't present, the Court hasn't relied on those statements in deciding the motions. Finally, Dr. Carter's objections to Stirn's characterization of the evidence are **OVERRULED AS MOOT**. The Court relies only on the undisputed, underlying evidence and not on any objected-to speculation or characterization of it.

1  Multivir for licensing fees. (*Id.* ¶ 9). Around May 2018, Dr. Carter and Sarah
2  Hibbard, the former General Counsel for EpicentRx, consulted with Defense
3  Counsel Ricciardulli and MicKillop about the matter. (*Id.* ¶ 7).
4      On August 23, 2018, Hibbard signed an initial engagement letter with
5  Defense Counsel. (*Id.* ¶ 9). On August 28, 2018, Ricciardulli sent a demand letter
6  to Multivir's counsel, informing them that he, "together with Donald McKillop,
7  have been retained as litigation counsel by EpicentRx" in the dispute with
8  Multivir. (*Id.* ¶ 11, Ex. B). The letter stated that, "as you also know, this debt has
9  been outstanding since September 18, 2017. Your client has paid nothing in
10 nearly one year since the work was first invoiced." (*Id.*). The parties failed to
11 resolve their issues, and on September 14, 2018, following EpicentRx's decision
12 to sue Multivir, EpicentRx signed a broader litigation retention agreement with
13 Defense Counsel. (*Id.* ¶ 13). For this legal work, Defense Counsel billed
14 EpicentRx a total of 5.1 hours—three for reviewing documents and preparing the
15 complaint to be filed against Multivir, and just over an hour for conferences with
16 EpicentRx executives, including Hibbard and Dr. Carter. (*Id.* ¶ 14, Ex. E).
17 Defense Counsel never filed the lawsuit against Multivir. (*Id.* ¶ 17).

18     **B. Current Lawsuit**
19     On May 8, 2020, EpicentRx terminated Dr. Carter for cause, (FAC ¶ 74),
20 and on June 9, 2020, brought this suit against him. EpicentRx's Complaint cites
21 several instances of Dr. Carter's misconduct, including his attempts at
22 manipulating EpicentRx's clinical trial data, (*id.* ¶ 49); misuse of his corporate
23 travel budget, (*id.* ¶ 57); facilitation of kickbacks with an accounting firm he hired
24 on EpicentRx's behalf, (*id.* ¶¶ 59, 61); inappropriate sexual relationship with a
25 subordinate, (*id.* ¶ 68); illegal dispensation of prescription drugs, (*id.* ¶ 69); and
26 secret installation of audio-visual recording devices around the EpicentRx facility
27 without any employee's knowledge or consent, (*id.* ¶ 77). As to the latter offense,
28 one of the three cameras found on the premises was in Dr. Carter's office where

confidential information was regularly discussed, and another camera faced the laboratory and several computers, where it likely recorded proprietary and confidential information. (*Id.* ¶ 80). The recordings made by the devices were uploaded to Dr. Carter's cloud storage account, which was linked to his personal email address, corey.carter33@gmail.com. (*Id.* ¶ 78).

EpicentRx's Complaint against Dr. Carter alleges ten causes of action, including for misappropriation of trade secrets; violation of the Electronic Communications Privacy Act ("ECPA"); violation of California's Invasion of Privacy Act ("CIPA"); breach of contract; breach of the covenant of good faith and fair dealing; breach of fiduciary duties; negligent misrepresentation; fraud and intentional misrepresentation; intentional interference with prospective economic relations; and unfair competition.

## II. Legal Standard

"The authority of a trial court to disqualify an attorney derives from the power inherent in every court [t]o control in furtherance of justice, the conduct of its ministerial officers." *City & Cnty. of S.F. v. Cobra Solutions, Inc.,* 38 Cal. 4th 839, 846, 43 Cal. Rptr. 3d 771, 135 P.3d 20 (2006) (citation and quotes omitted); *see also United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir.1996). In determining whether to disqualify counsel, the Court applies California law. *In re Cnty. of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.").

Motions to disqualify counsel ultimately "involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *People ex rel. Dept. of Corps. V. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999). In considering a disqualification motion, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id.*

Accordingly, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.'" *Collins v. State*, 121 Cal. App. 4th 1112, 1124 (2004) (citing *id.*).

"An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity." *Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014) (citations omitted). The moving party carries a heavy burden and must satisfy the high standard of proof. *Id.* (citing *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir. 1983)). And because there is a potential for tactical abuse associated with disqualification motions, they "should be subjected to particularly strict judicial scrutiny." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). "[C]ourts may properly consider the totality of the circumstances, including whether the motion is being brought in bad faith or otherwise for tactical reasons." *Sherman v. CLP Res., Inc.*, No. CV 12-8080-GW (PLAx), 2015 WL 13542762, at *7 (C.D. Cal. Feb. 4, 2015) (citations omitted).

### III.   Discussion

EpicentRx asserts, and Dr. Carter doesn't dispute, that an attorney-client relationship existed between EpicentRx and Defense Counsel in 2018 when EpicentRx retained Defense Counsel to assist with the Multivir dispute. EpicentRx now seeks to have this Court disqualify Defense Counsel from representing Dr. Carter in the present case because of that prior engagement, arguing that Defense Counsel obtained an array of confidential information about EpicentRx that could operate to its detriment in this case.

According to Rule 1.9(a) of California's Rules of Professional Conduct,

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the

> same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent.

The rule further provides that a lawyer who has formerly represented a client in a matter shall not "use information . . . acquired by virtue of the representation of the former client to the disadvantage of the former client." Cal. R. Prof'l. Conduct 1.9(c)(1). This duty extends to a lawyer whose present or former firm has formerly represented a client in a matter. *Id.* In instances of successive representation, when an attorney undertakes to represent a client adverse to a former client, the focus is on confidentiality. *Western Sugar Coop. v. Archer-Daniels-Midlands Co.,* 98 F. Supp. 3d 1074, 1080 (C.D. Cal. 2015).

      The former client may disqualify the attorney by showing a "substantial relationship" between the subjects of the prior and current representations. *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 284, 885 P.2d 950, 955 (1994). "A substantial relationship exists where 'the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.'" *Khani v. Ford Motor Co.*, 215 Cal. App. 4th 916, 920, 155 Cal. Rptr. 3d 532 (2013). Whether two representations are substantially related depends on the factual situation, legal questions, and the attorneys' involvement in the two cases. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,* 69 Cal. App. 4th 223, 234, 81 Cal. Rptr. 2d 425 (1999). "[T]he court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *Id.* Information from the first representation must be material to the second. *Id*.

      The Court begins its analysis by considering the scope and nature of the two cases. Based on the evidence presented, the Court understands the circumstances of the 2018 Multivir dispute to be as follows: EpicentRx had an

agreement with Multivir, the parties' relationship ended, Multivir owed money to EpicentRx, EpicentRx retained attorneys to help collect this money, Multivir still failed to pay, EpicentRx threatened to sue Multivir to collect the money, and the parties ultimately resolved their issues outside of court. Specifically, Defense Counsel was retained by EpicentRx in 2018 to assist with collecting outstanding licensing fees from Multivir. (Stirn Decl. ¶ 9; Declaration of Guy A. Ricciardulli ("G.R. Decl.") ¶ 2). The purpose of EpicentRx's first engagement letter with Defense Counsel was "for Defense Counsel to attempt to enforce an agreement to collect significant licensing fees from Multivir, an adverse party." (Stirn Decl. ¶ 9). Multivir's debt remained outstanding, and EpicentRx then entered into a second, broader engagement letter with Defense Counsel following EpicentRx's decision to sue Multivir to collect its fees. (*Id.* ¶ 13). That lawsuit was never filed (*id*. ¶ 14), and Defense Counsel was instructed to "stand down prior to even completing the appropriate research on MultiVir's legal capacity, place of domicile, agent for service of process, asset check and capacity to do business in California." (GR Decl. ¶ 14).

In contrast, the present dispute is centered entirely around the alleged misconduct of Dr. Carter in his capacity as former CEO of EpicentRx. The factual allegations made against Dr. Carter are extensive and the Complaint provides a detailed account of his many alleged abuses, such as his alleged manipulation of clinical trial data, secret installation of recording devices inside the company facility, and misuse and mismanagement of corporate funds. (Compl. ¶¶ 49, 57, 59, 61, and 77). The operative Complaint includes ten claims against Dr. Carter, all of which have to do with his alleged fraud on the company and his violations of his employment agreement, his fiduciary duties, and trade secret and privacy laws.

Based on the facts alleged, the two matters appear factually distinct. The Multivir dispute was a discrete matter that involved an attempt to collect

outstanding licensing fees from another company, and the present dispute has to do with a former employee who allegedly frauded EpicentRx and was engaged in a series of misconduct while CEO. EpicentRx argues that the matters are not actually distinct because in the 2018 Multivir dispute, Defense Counsel admits to having "had an opportunity to review the relevant contract documents" (Stirn Decl., Ex. B), which it contends necessarily include "confidential and proprietary licensing agreements between EpicentRx and Mulitivir" (Dkt. 69 at 3–4). EpicentRx suggests that Defense Counsel's engagement in 2018 involved discussing "licensing and ownership issues" with Hibbard and/or Dr. Carter (Stirn Decl. ¶ 7), and that this necessarily overlaps with some of EpicentRx's claims in its Complaint. But these same letters referenced by EpicentRx contradict this overbroad characterization of the prior representation. The August 28, 2018 letter from Defense Counsel to Multivir's counsel clearly states that the crux of the dispute was about debts outstanding and obligations to pay. (*Id*., Exs. B, C). That letter acknowledges that the "debt has been outstanding since September 18, 2017," and invites Multivir "to amicably and informally resolve this matter." (Stirn Decl., Ex. B). It is conceivable that Defense Counsel may have reviewed some of the underlying contract documents between Multivir and EpicentRx to determine the extent of Multivir's financial liability, but reviewing a contract to determine debt obligations is no doubt different than reviewing a contract to determine, for instance, how EpicentRx developed its treatments or negotiated licensing.

      Moreover, Hibbard, who was the primary contact with Defense Counsel, testified in her deposition that the sum of her communications with Defense Counsel and all the information she shared with them was reflected in the demand letter sent by Defense Counsel to Multivir's counsel on August 28, 2018, which clearly indicates that the dispute was about Multivir owing money. (Dkt. 61-6, Deposition of Sarah Hibbard ("Hibbard Depo.") at 16:19–17:15). The Court is dubious that Defense Counsel's prior engagement with EpicentRx extended

beyond this given the straightforward issues at play in the Multivir dispute. Hibbard's deposition testimony confirms that, with respect to Defense Counsel's prior engagement, she never discussed licensing or ownership issues with them or asked them to file a lawsuit against Multivir on that basis. (Hibbard Depo. at 25:8–18). She also testifies that she never shared with Defense Counsel how EpicentRx developed and licensed various treatments; how it negotiated licensing for its treatments; how it approached valuation of its treatments; how it structured and enforced its contractual obligations; or any information concerning Dr. Carter's alleged misconduct. (*Id.* 30:8–33:8). The Court finds this testimony credible given that EpicentRx admits that the nature of the Multivir dispute was about outstanding debt and offers hardly any evidence to suggest otherwise. Moreover, the total hours billed for this engagement was 5.1 hours, and while the number of hours spent on a matter alone is not necessarily indicative of whether there is a conflict here, it certainly lends to the Court's understanding that the scope of Defense Counsel's engagement with EpicentRx was very limited. (Stirn Decl., Ex. E). This is particularly true where only about one hour was spent actually talking to any EpicentRx employees, namely Hibbard, and the rest of the time was spent preparing a complaint alleging claims related to the recovery of money owed. (*Id.*).

      Finally, EpicentRx filed an Application for Leave to File Supplemental Submission of Newly Discovered Fact, (Dkt. 55), requesting that the Court consider its discovery that Defense Counsel "employ the mother of EpicentRx's former in-house general counsel, Sarah Hibbard," as their paralegal. (Dkt. 55 at 1 (italics omitted)). EpicentRx argues that this not only gives Defense Counsel an advantage in deposing Hibbard,[2] but it also increases the risk that Defense

---

[2] Hibbard was deposed on October 23, 2020, and excerpts of her deposition are attached as Exhibit 2 to the Declaration of Guy A. Ricciardulli. (Dkt. 61-6).

Counsel could use EpicentRx's confidential information against EpicentRx for purposes of disqualification. The Court **GRANTS** the Application to consider the new evidence, but finds EpicentRx's arguments unconvincing. Merely because Hibbard's mother is employed by Defense Counsel doesn't automatically create a conflict. Not only is Hibbard no longer employed by EpicentRx, but it's also unclear what confidential information could be shared between Hibbard and her mother such that Defense Counsel could gain an unfair advantage in deposing her. Hibbard has already been deposed in this case, and the deposition was strictly limited to topics related to communications exchanged between Hibbard and Defense Counsel concerning the Multivir dispute. (Dkt. 60 at 9).

Further, EpicentRx cites to cases where, unlike here, the concerns of undue influence and conflict of interest were undeniable. In *People v. Superior Ct.*, a district attorney was disqualified from a case where the victim's mother was the "discovery clerk" at the same office in which the prosecution of the case was being handled. 19 Cal. 3d 255, 259, 561 P.2d 1164 (1977). The underlying case involved a custody battle between the defendant and the victim. *Id*. The victim's mother was not only scheduled to be a material witness for the prosecution, but she also stood to gain custody of the child if the defendant mother was convicted. *Id.* The facts in *Kennedy v. Eldridge* are inapplicable here, too. 201 Cal. App. 4th 1197, 1207, 135 Cal. Rptr. 3d 545, 553 (2011). There, the court found a substantial relationship where the attorney who had previously represented the litigant's father in a divorce dispute now represented the father of her child in a legal battle over custody of their child. *Id.* The Court acknowledged that "[i]n both cases Kayla plays a key role, formerly as a child of one of the litigants battling over custody, presently as the mother of the child who is litigating custody against the father, who also happens to be [the attorney]'s son." *Id.* The relationship between a paralegal for Defense Counsel and a former employee at EpicentRx creates nowhere near the same concerns as in these cases.

Given the facts alleged about the two matters, Defense Counsel Ricciardulli and McKillop need not be disqualified. The Court is unable to conclude, based on the information provided thus far, that the 2018 Multivir dispute and the present litigation are substantially related such that a conflict of interest exists for Defense Counsel. EpicentRx's motion to disqualify Defense Counsel is therefore **DENIED WITHOUT PREJUDICE**.

### IV.   CONCLUSION

For the foregoing reasons, EpicentRx's Application for Leave to File Supplemental Submission of Newly Discovered Fact is **GRANTED** and EpicentRx's Motion to Disqualify Attorneys Guy A. Ricciardulli, Donald R. McKillop and Their Law Firms is **DENIED WITHOUT PREJUDICE**. To the extent that new information becomes available which suggests that a more significant relationship existed between EpicentRx and Defense Counsel, EpicentRx may bring this motion again.

The suspension on briefing the motion to dismiss, (Dkt. 44), is lifted, and counsel for EpicentRx is **ORDERED** to obtain a hearing date from chambers within three court days of the date of this Order. The briefing schedule shall proceed in accordance with CivLR 7.1(e).

**IT IS SO ORDERED**.

Dated:  September 29, 2021

*/s/ Larry A. Burns*

Honorable Larry Alan Burns
United States District Judge